Filed 11/18/21  Rough v. Berris CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SANDEE ROUGH, as Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> NORMAN BERRIS et al., <br><br> Defendants and Appellants. | B309228 <br><br> (Los Angeles County <br> Super. Ct. No. 19STCP01095) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie Bowick, Judge.  Affirmed.

Loeb & Loeb and William M. Brody for Defendants and Appellants.

Baker & McKenzie, Perrie M. Weiner, Edward D. Totino and Benjamin W. Turner for Plaintiff and Respondent.

_____

Respondent Sandee Rough initiated arbitration against individual and corporate entities with whom she (and her late husband) participated in a real estate venture. She alleged accounting irregularities and claimed to have equitable interests in the two Walgreens drug stores that were acquired following the sale of two prior apartment buildings that were jointly owned.[1]

The arbitration clauses in the operative written agreements were signed by the individual appellants. After nearly two years of arbitration, the arbitrator awarded Rough a one-third equitable interest in the two drug stores, as well as her legal fees, arbitration costs, and over $700,000 for accounting irregularities by the individual appellants. Appellants paid Rough her monetary award in full.

When Rough petitioned the trial court to confirm the arbitration award, the individual appellants and their newly-formed LLC appellants claimed, at various points, that they were

---

[1] Rough and her R&S Rough Living Trust dated March 1, 1990 (the R&S Trust) are partners with the individually-named appellants Norman Berris, Ruth Jeanette Veprin, and Sondra Pomerantz (individual appellants) as well as the entities they formed to purchase and manage two Walgreens drugstores, Waterford 20 LLC and 496 Ritchie Highway LLC (LLC appellants). The earlier partnership entities were denominated as Magnolia Apartments, L.P. and Racquet Club Apartments, L.P. (LP appellants). No specific award was made against the LP appellants and they seek no relief in this appeal. The term "appellants" refers to both the individual and LLC appellants collectively, but does not include individual appellant Jeff Berris, who was neither named as a respondent in the arbitration nor represented by counsel while it took place.

not proper parties to the arbitration and also had not participated in the arbitration so as to bind them to its results.

The trial court granted Rough's petition in a 12-page order, finding that appellants either had signed arbitration agreements and/or impliedly consented to arbitration by fully participating in the proceedings.

As they did in the trial court, appellants claim they are not bound by the arbitration award under Code of Civil Procedure section 1287.2 [2] which requires trial courts to dismiss a confirmation petition against any person that "the court determines . . . [is] not bound by the arbitration award *and* was not a party to the arbitration." (§ 1287.2, italics added.)

Although appellants claim the benefit of a written stipulation to limit the responsible parties, the record contains scant evidence of its existence. Appellants participated in and submitted to the arbitration, paying over $1 million in withheld distributions, attorney's fees and administrative costs, in accordance with the arbitrator's award. All appellants were represented by sophisticated legal counsel who aggressively contested the merits of the claims.

Section 1287.2 does not require or authorize dismissal of appellants under these circumstances. Thus, we affirm the trial court's judgment confirming the arbitration award as to all appellants, including individual appellant Jeff Berris.

---

[2] Subsequent undesignated statutory citations are to the Code of Civil Procedure.

3

# FACTUAL AND PROCEDURAL BACKGROUND[3]

## A.    The Parties' Dispute

In the 1970s, Rough's late husband and predecessor-in-interest invested in two apartment buildings, the Magnolia Apartments and the Racquet Club Apartments, with individual appellants and others.  Rough's late husband constructed the buildings with the individual appellants (or their predecessors) providing financing.  The parties agreed to equally share any distributions from the projects.

This business arrangement was not memorialized until 1994, when the parties drafted a pair of ownership agreements that gave the R&S Trust, to which Rough's husband had transferred his interest, an equitable interest in each apartment building, entitling the trust to a share of any profits distributed from the properties.  These agreements contain identical arbitration clauses, stating that "[a]ll disputes under this [a]greement shall be resolved by arbitration under the then rules of the American Arbitration Association."

In 2014 and 2015, both of the apartments owned by the LP appellants were sold, prompting some parties to terminate their interests under the ownership agreements, whereas Rough and the individual appellants elected to exchange their share of the proceeds for an interest in two Walgreens drug stores (the replacement properties which were held in the name of the LLC appellants).  This exchange tripled the value of the partners' property interests.

---

[3] This factual background is largely taken from the arbitration award.

4

Later, there was disagreement about the percentage of the R&S Trust's equitable interests in the two new properties. Rough also suspected that accounting irregularities had attributed an increasing amount of debt to the R&S Trust over time, effectively decreasing the amount of distributions owed to the trust.

## B.     The Arbitration

On September 19, 2016, Rough demanded that the parties arbitrate their disputed interests in the two Walgreens drug stores, pursuant to the arbitration clauses within the ownership agreements. She named the individual appellants as respondents.

From the beginning, Rough and individual appellants disagreed as to which persons and entities were subject to arbitration. Appellants claimed that Rough had stipulated to exclude them from arbitration and include the entities which owned the two Walgreens drug stores. Rough claimed that she had been prepared to stipulate along these lines, but that the stipulation was stymied by individual appellants' unwillingness to disclose the names of the new ownership entities (LLC appellants).

On May 27, 2017, the arbitration hearing took place. Appellants were jointly represented by sophisticated counsel, who filed a trial brief specifically on behalf of individual appellants, arguing not only that the individual appellants were not proper parties but also arguing the merits, i.e., that the R&S Trust was not entitled to an increased percentage of distributions, that the trust owed a significant amount of debt, and that it was not entitled to prejudgment interest.

5

On April 9, 2018, the arbitrator issued a final award in Rough's favor, containing two forms of relief: (1) a monetary judgment of over $1 million in wrongfully withheld distributions,[4] attorney's fees, administrative costs, and pre-judgment interest; and (2) declaratory relief providing that the R&S Trust was entitled to increased equitable interests in the two drugstore replacement properties.[5]

On December 27, 2017, appellants made payments totaling $1,026,298.43 pursuant to the arbitration award.

## C.   The Petition to Confirm the Arbitration Award

On April 8, 2019, Rough filed a petition to confirm the arbitration award against appellants, including Jeff Berris as Pomerantz's alleged successor-in-interest, pursuant to section

---

[4] As the arbitrator concluded, "[s]uffice it to say that such accounting treatment was not remotely in accordance with generally accepted accounting principles."

[5] Both leading up to the arbitration and afterwards there was some confusion about the identities of the "current holders of interests" in the two Walgreens drug stores. The parties submitted numerous emails presenting argument on which parties were properly subject to arbitration. When Rough learned through independent research that the LLC appellants owned the drugstore replacement properties, she communicated this to appellants and the arbitrator. Although the arbitration award begins by saying that the parties agreed (at the beginning) that the proper parties were the R&S Trust and LP appellants, it later discusses the role of the individual and LLC appellants and enters significant monetary judgments and equitable relief against them, with the declaratory relief also binding upon all persons and entities who hold ownership interests in the replacement drugstore properties.

6

1285.  She filed a noticed motion for the court to hear the petition on May 6, 2019.  The parties then stipulated to continue the hearing date until January 28, 2020.

On January 6, 2020, all appellants responded by requesting that Rough's petition be dismissed as to individual appellants, LLC appellants, and Jeff Berris pursuant to section 1287.2.  After multiple rounds of briefing and oral argument on the confirmation petition, the trial court concluded that none of these appellants was eligible for dismissal under section 1287.2.

The trial court found that both groups of appellants (i.e., the individual appellants and LLC appellants) were parties to the arbitration, achieving that status either by signing the arbitration agreements, by their conduct during the arbitration proceedings, and/or by the lawful decision of the arbitrator.[6]  Accordingly, the trial court granted the petition and confirmed the arbitration award against all appellants.

All appellants timely appealed.

## DISCUSSION

The individual and LLC appellants argue that the petition should have been dismissed against them under section 1287.2 because neither was a party to the arbitration and because the

---

[6] Among other things, the Code of Civil Procedure defines a party to arbitration as "[a] party against whom such arbitration is sought pursuant to [an arbitration] agreement," or "[a] party who is made a party to the arbitration by order of the neutral arbitrator . . . upon the application of any other party to the arbitration, or upon the neutral arbitrator's own determination." (§ 1280, subd. (h)(2) & (3).)

arbitrator exceeded his authority in purporting to bind them to the award.

We review the trial court's decision to confirm the arbitration award de novo. (*EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058, 1063.) Any questions of law, including questions of statutory interpretation, are reviewed under the same standard. (*Webster v. Superior Court of San Bernardino County* (2020) 51 Cal.App.5th 676, 679.)

Appellants' sole argument is that the trial court should have dismissed both the individual and LLC appellants under section 1287.2, which requires the trial court to dismiss the confirmation petition "as to any person . . . if the court determines that such person was not bound by the arbitration award and was not a party to the arbitration."[7] (§ 1287.2.) To qualify for relief under section 1287.2, the court must determine that a person is *neither* a party to arbitration *nor* bound by the arbitration award. (See § 1285 ["The petition shall name as respondents all parties to the arbitration and may name as respondents any other persons bound by the arbitration award"]; see also § 1280, subd. (h)(2) & (3) [party to arbitration defined as "[a] party against whom such arbitration is sought pursuant to

---

[7] Appellants' position as to appropriate parties is ambiguous at best. They simultaneously argue that the LP appellants are the only appropriate parties to arbitration *and* that the stipulation substituted the LLC appellants for individual appellants. Immediately after the completion of arbitration, however, appellants argued that the LLC appellants were the *only* appropriate parties. Their opening brief on appeal states that "LLC [a]ppellants along with the LP [a]ppellants[ ] *could have* been parties pursuant to the stipulation." (Italics added.)

[an arbitration] agreement," or "[a] party who is made a party to the arbitration by order of the neutral arbitrator . . . upon the application of any other party to the arbitration, or upon the neutral arbitrator's own determination"].)

Initially, appellants claim that they and Rough agreed to a stipulation limiting the appropriate parties. However, they have not met their burden of proving that the parties entered into any sort of stipulation with respect to appropriate parties to the arbitration. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [the moving party bears the entire burden of persuasion and the initial burden of producing evidence sufficient to sustain a judgment in the movant's favor].)

The record contains no evidence of any sort of stipulation, save for a single reference by the arbitrator to a pre-arbitration agreement, which appellants admit is inconsistent with the award of declaratory relief he ultimately made. Nor do appellants present a cogent explanation of the stipulation's terms, alternately claiming that the stipulation excludes only individual appellants,[8] that the stipulation excludes both individual and LLC appellants, and that the stipulation replaced LP appellants with LLC appellants.

Even were we to accept appellants' argument that individual appellants and LLC appellants did not specifically

---

[8] The request for clarification that appellants submitted to the arbitrator also suggests that individual appellants could properly be held accountable for Rough's attorney's fees and pre-award interest—which individual appellants appear to have subsequently paid. This is inconsistent with appellants' insistence that individual appellants cannot not be bound by the arbitration award.

agree to arbitration, it would not alter the result. The totality of the record supports the trial court's finding that individual appellants and LLC appellants should be considered parties to the arbitration because of their submission to and participation in the arbitral process. (See *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 387, 389 ["parties may enter into an implied in fact agreement to arbitrate through their conduct (which may additionally be deemed to estop them from denying such an agreement)" the test for assessing whether a party, through his conduct in litigating in an arbitral forum, has thereby waived his right to litigate in a judicial forum is less onerous than waiver of judicial litigation because of the strong public policy favoring arbitration].) Appellants' payment of over $1 million in withheld distributions, attorney's fees and administrative costs, which was paid by the individual appellants well before Rough filed her confirmation petition, belies the assertion that the individual appellants and/or LLC appellants are not bound by the arbitration.

Further, appellants do not dispute that they are specifically named by the arbitrator as persons who are bound by the arbitration award, and they cite no legal authority interpreting section 1287.2 as requiring the trial court to dismiss the petition against persons who are found to be bound by an arbitration award. The reason for a dearth of authority is simple: section 1287.2 is rarely cited by appellate courts. Only three cases analyze a person's eligibility for relief under the specific terms of section 1287.2, and none of them supports appellants' position.[9]

---

[9] Most of these cases either cite section 1287.2 only in passing while describing the confirmation petition process (see, e.g., *Law Offices of David S. Karton v. Segreto* (2009) 176

In *N.A.M.E.S. v. Singer* (1979) 90 Cal.App.3d 653, 656, our colleagues in Division Four affirmed the trial court's grant of a confirmation petition over the appellant's objections, concluding that the appellant had assented to arbitration. In *Southern Cal. Pipe Trades Dist. Council No. 16 v. Merritt* (1981) 126 Cal.App.3d 530, 539 (*Southern Cal. Pipe*), our colleagues in Division Five reversed the grant of a confirmation petition against a corporate officer who was not properly noticed as a party to arbitration, and who thus had no reason to appear in the arbitral proceedings to defend his interests. In *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1223, the Fourth District Court of Appeal remanded the question of whether a group of defendants consented to arbitration after finding that the court did not make any findings of fact on that central issue, relying instead on an insufficient arbitration agreement which, although signed by the defendants' attorney, may not have been ratified by the defendants.

Appellants assert that *Southern Cal. Pipe* stands for the proposition that "an arbitration award against one party is not binding upon another person who was not party to the arbitration." (*Southern Cal. Pipe, supra*, 126 Cal.App.3d at p. 536.) This broad assertion is neither supported by the holding of that court nor applicable where, as here, appellants had notice of and fully participated in the arbitration.

In *Southern Cal. Pipe*, the corporate officer who was designated to (and did in fact receive) service on behalf of his corporation moved for dismissal under section 1287.2. Although

---

Cal.App.4th 1, 10), or discuss whether additional grounds could justify dismissal of a confirmation petition (see, e.g., *Maplebear, Inc. v. Busick* (2018) 26 Cal.App.5th 394, 401).

the officer had received notice of an arbitration proceeding, "there [was] no indication that personal liability independent of [the corporation] [was] sought." (*Southern Cal. Pipe, supra*, 126 Cal.App.3d at p. 538.) Further, the officer did not attend or participate in the arbitration because "[t]he record [did] not show that [the officer] had any notice or reason to appear and defend personally." (*Id.* at p. 539.)

The situation in *Southern Cal. Pipe* is readily distinguishable from the present case, where the individual appellants: (1) were each given notice naming them as parties and appeared; (2) were on notice that they might be held personally liable; and (3) were represented throughout by sophisticated legal counsel who filed trial and closing briefs on their behalf that addressed the merits of the claims.

Further, neither the arbitrator nor the trial court erred in concluding that the LLC appellants were bound by the results of the arbitration. These entities appear to have been formed by the individual appellants specifically for the purpose of holding title to the two Walgreens drugstores after the sale of the prior apartment buildings. They, too, were represented by counsel and participated in the arbitration. At various points counsel argued that the LLC appellants were appropriate parties to the arbitration.[10]

---

[10] Appellants also contend that the petition should be dismissed as to Jeff Berris because Rough did not prove, and the trial court did not find, that he was Pomerantz's successor-in-interest to the property interests at issue in the arbitration. However, by confirming the arbitration award as to Jeff Berris, the trial court impliedly found in favor of Rough's assertion that he was Pomerantz's successor-in-interest. (*In re Marriage of*

12

Appellants were given appropriate notice, represented by experienced counsel, and fully participated in the proceedings. Their efforts to undermine the authority of the arbitrator, recharacterize their participation in the proceedings, and second-guess the trial court's dismissal ruling are unavailing.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.

NOT TO BE PUBLISHED


CRANDALL, J.*


We concur:


CHANEY, J.                          BENDIX, Acting P. J.

---

*Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"]; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48 ["Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision"].)  The trial court's implied finding is supported by the record.

   * Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.