Filed 2/25/14  Patamakanthin v. Gianulas CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SOMMAI PATAMAKANTHIN et al., | |
| Cross-complainants and Respondents, | G047860 |
| v. | (Super. Ct. No. 30-2009-00313565) |
| DAVID GIANULIAS, | O P I N I O N |
| Cross-defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.

John D. Younesi and Jan A. Yoss for Cross-defendant and Appellant.

Fink & Steinberg, Keith A. Fink and Olaf J. Muller for Cross-complainants and Respondents.

\*          \*          \*

Cross-defendant and appellant David Gianulias appeals from the denial of his motion to vacate the $2.276 million default judgment entered against him in favor of cross-complainants and respondents Sommai (Sam) Patamakanthin[1] and Chic Home Trends, Inc. (Chic; collectively cross-complainants). Gianulias claims the judgment was void under Code of Civil Procedure section 580 because it was in excess of what was sought in the cross-complaint. He argues this constituted a "de facto amendment" of the cross-complaint, voiding the default and affording him the opportunity to answer and defend the action. We disagree and affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Because the issues in this case are procedural, the facts are of only limited significance. Suffice it to say that Sam owned Chic (formerly known as Trend Setting Design Group), an import business. In 2009 Chic entered into a Purchase and Sale Agreement for the sale of the assets of Chic to The Trendsetting Design Group, Inc., which subsequently changed its name to Trend Setting Designs, Inc. (TTSDG), whose principal owner was Gianulias. The purchase price was $3 million, payable over three years, part to Chic and part to Sam, plus other consideration.

TTSDG made only one payment and then filed a complaint against Sam and members of his family for fraud, breach of contract, and other causes of action, essentially claiming Chic did not own the assets it sold. Cross-complainants then cross-complained against TTSDG, Gianulias, and two other individual defendants.

The first amended cross-complaint (cross-complaint) contained causes of action for breach of contract and for intentional and negligent misrepresentation. In addition, the cross-complaint alleged Gianulias and the other individual cross-defendants were the alter ego of TTSDG. These allegations were incorporated into the breach of contract cause of action.

---

[1] For ease of reference and consistent with the respondents' brief the opinion will refer to Sommai Patamakanthin as Sam.

2

The breach of contract cause of action pleaded Chic had been damaged in the sum of $500,000 plus interest at the rate of 10 percent per annum from August 5, 2009, the date of the breach. It alleged Sam was damaged in the amount of $2 million, and 5 percent of TTSDG's net profits, plus an additional $92,404. Damages alleged in the fraud and negligent misrepresentation causes of action were consistent, $2,592,404. The prayer sought $2,592,404, plus interest at 10 percent per annum.

After cross-defendants answered, their answers were stricken and their defaults were entered. TTSDG's answer was stricken based on its failure to retain counsel after the court issued an order to show cause to that effect. Gianulias's answer was stricken as a terminating sanction based on his repeated failure to respond to discovery.

Cross-complainants then filed a motion seeking default judgment against cross-defendants. The argument was directed to the breach of contract cause of action. As part of the motion cross-complainants submitted evidence that Gianulias was the alter ego of TTSDG. Cross-complainants sought judgment in the amount of $3,007,569, plus unpaid sanctions.

The court granted the motion, awarding Chic judgment against cross-defendants in the sum of $631,780.82 plus prejudgment interest at 10 percent per annum. Sam recovered judgment in the sum of $2,276,712.73 with prejudgment interest at 10 percent per annum. The court also included unpaid sanctions in the sum of over $9,100 owed by Gianulias and also awarded costs to cross-complainants.

Gianulias filed a motion to set aside the judgment as void under Code of Civil Procedure section 580 because it was in excess of the relief sought in the cross-complaint. He also asserted it violated due process. Specifically, he argued that he was not a party to the breach of contract cause of action and thus the court could not enter judgment against him on that basis.

The court denied Gianulias's motion. It rejected his argument that cross-complainants' prove up of the alter ego claim, which he claimed sought relief beyond that alleged, was a "de facto amendment" to the pleading requiring that the default be set aside. The court found the alter ego allegations incorporated into the breach of contract cause of action were sufficient to hold Gianulias on that claim.

The court also ruled the evidence cross-complainants submitted proved Gianulias was liable on the misrepresentation causes of action. Gianulias's argument the motion for judgment was based solely on the breach of contract claim did not matter because he was not barred from opposing the motion, and the judgment was not based solely on the breach of contract cause of action. Further, the amount of the judgment was less than sought in the cross-complaint.

## DISCUSSION

Code of Civil Procedure section 580, subdivision (a) provides that, in the event of a default, a cross-complainant may not recover in excess of the demand of the cross-complaint. Gianulias contends the judgment is void in violation of this section. Specifically, he asserts that, because he was not specifically named in the breach of contract cause of action, cross-complainants had no right to recover against him on that theory. He claims the judgment is the equivalent of a "de facto amendment" to the cross-complaint, with the effect that the default must be vacated and he must be given the opportunity to answer and defend. Gianulias's argument is flawed for several reasons.

First, the case law does not support it. In particular, *Jackson v. Bank of America* (1986) 188 Cal.App.3d 375, on which Gianulias heavily relies, is inapt. In that case, the complaint failed to state a causal connection between the plaintiff's wrongful conduct and the damages. The evidence of damages proffered at the prove-up hearing was based on conduct occurring after the complaint was filed. The court found this evidence was a de facto amendment of the complaint, and ordered the default be set aside and the defendant served with the amended complaint, giving it the opportunity to file an

4

answer.  (*Id*. at p. 389.)  The court held this rule was necessary or otherwise "*any* new evidence, based on *any* theory, could be introduced at a default hearing, as long as no formal amendment were requested . . . ."  (*Ibid*.)

But *Jackson* has been criticized, both in other cases and by commentators. (E.g., *Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1744 [evidence beyond allegations in complaint is not equivalent of amendment of complaint; reversal of default judgment does not set aside default]; see also *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1182 [relying on *Ostling*, rejected "notion" relief sought beyond that sought in complaint is "de facto amendment"; "appropriate remedy" is reversal of judgment but default remains]; see Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2012) ¶¶ 5:256.1 to 5:256.2, p. 5-63 [*Jackson* holding "seems incorrect"].)  The trial court discounted *Jackson* and chose to rely on the analysis and conclusion of *Electronic Funds*.  We do as well.

In addition, in the case before us, the evidence which proved up the breach of contract cause of action did not go beyond the allegations of the cross-complaint. Alter ego was pleaded and incorporated into the breach of contract cause of action. Gianulias's attack on the 300 pages of cross-complainants' evidence does nothing to overcome the sufficient pleading and proof of alter ego.  The evidence was not "new" nor based on "any theory."  Alter ego was alleged and then proved.

Further, the cross-complaint gave Gianulias sufficient notice of his potential liability.  He answered and defended against it.  He cannot claim he was either actually or constructively without knowledge of the allegation or the basis of liability.

Gianulias asserts the cross-complaint violated California Rules of Court, rule 2.112, which requires that each cause of action be labeled with a heading that includes, among other things, the parties against whom it is directed.  The breach of contract cause of action in the cross-complaint designates it is against TTSDG.

5

Gianulias maintains that fact alone shows he had no notice he could be held liable under the breach of contract claim. But his argument is not convincing. A fair reading of the complaint makes clear cross-complainants were seeking to hold him liable on the breach of contract cause of action under an alter ego theory. Furthermore, there would be no other reason to allege alter ego and incorporate it into the breach of contract cause of action if not to make Gianulias liable on that claim. Moreover, as the trial court noted, cross-complainants do not allege Gianulias breached the contract, only that he is derivatively liable on the alter ego theory.

We reject Gianulias's related contention the alter ego allegations were not specific but only generic boilerplate. The cross-complaint pleaded several specific bases for alter ego liability: TTSDG's 1) failure to issue stock and to adequately capitalize in light of the business it would conduct and its financial obligations, including those to cross-complainants; 2) failure to maintain corporate formalities, including adequate records; 3) use of the same lawyers as previously employed by some of the individual cross-defendants; and 4) fraudulently inducing cross-complainants to enter into the Agreement while deliberately relying on a mere corporate shell and undercapitalizing to avoid performance and personal liability. This gave Gianulias more than adequate notice of the claims against him. And cross-complainants' evidence supported these allegations.

Alternatively, Gianulias complains he was not named in a cause of action for alter ego. But alter ego is not a separate cause of action. It "is essentially a theory of *vicarious* liability under which the owners of a corporation may be held liable for harm for which the corporation is responsible where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages. [Citation.]" (*Doney v. TRW, Inc.* (1995) 33 Cal.App.4th 245, 249,)

We are also not persuaded by Gianulias's claims regarding the prayer. He cites no authority that the prayer had to request a specific finding of alter ego so he could

6

have "particular notice." Nor did cross-complainants have to request judgment against him specifically on the breach of contract cause of action.

It is not surprising Gianulias cannot find a case to support his argument cross-complainants cannot prevail on an alter ego theory on default. There is no analogy to the rule a defendant cannot be added as a judgment debtor after trial unless he "participated in the defense." The cases on which Gianulias relies do not apply.

For example, he cites *Motores De Mexicali v. Superior Court* (1958) 51 Cal.2d 172 for the proposition he cannot be held liable because he did not appear at trial. In *Motores*, the plaintiff obtained a default judgment against one corporate debtor and then sought to add three individual parties as judgment debtors. The court rejected the request because the individuals did not take part in the defense of the action. Entering judgment without their opportunity to participate in the trial would violate due process. (*Id*. at p. 176.) There was no claim against them in the complaint and thus they had no duty to personally appear in the action. (*Ibid*.)

The facts in the case before us are completely different. Gianulias was named personally in the cross-complaint, which sought to hold him liable for breach of contract as the alter ego of TTSDG. He is not an unaware third party being "added" to the judgment without any prior notice or opportunity to be heard. He had the opportunity to defend the action in trial; only his bad conduct in refusing to respond to discovery prevented him from doing so.

Finally, it makes no difference whether the misrepresentation causes of action were proven. Proof of the breach of contract cause of action, imposing liability based on alter ego is sufficient to support the judgment.

7

## DISPOSITION

The judgment is affirmed.  Cross-complainants are entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.