Filed 8/19/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAW FINANCE GROUP, LLC,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>SARAH PLOTT KEY,<br><br>        Defendant and Respondent. | B305790<br><br>(Los Angeles County<br>Super. Ct. No. 19STCP04251)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on July 30, 2021, and reported in the Official Reports (___ Cal.App.5th ___ [2021 Cal.App. Lexis 625]) be modified in the following particulars:

1.  On page *17, first full paragraph, after the quoted phrase "cannot be relied upon to excuse a party's failure to comply with a jurisdictional statute of limitations," add as footnote 8 the following footnote, which will require renumbering the subsequent footnote:

**8** Our opinion in *Santa Monica* also forecloses another argument presented for the first time in Key's petition for rehearing. Key argues that she could raise her challenges to the arbitrators' ruling in response to LFG's petition to confirm whether or not she filed a timely request to vacate because the Loan Agreement was an illegal contract that the courts may not enforce. Of course, the alleged illegality of the Loan Agreement under the governing statutes was an issue in the arbitration, the results of which Key sought to challenge in court. In *Santa Monica*, we rejected the argument that a trial court is empowered "to entertain a challenge to an arbitration award based on the award's illegality, even when the challenging party missed the 100-day filing and service deadline." (*Santa Monica, supra,* 243 Cal.App.4th at p. 546.) Specifically, we declined to construe the holding in *South Bay Radiology Medical Associates v. Asher* (1990) 220 Cal.App.3d 1074 as "authorizing judicial review of untimely challenges to arbitration awards whenever those challengers assert that the award contravenes a statute." (*Santa Monica,* at p. 546.) We explained that "to do so would create an exception that would swallow the general rule hinging jurisdiction on the timeliness of the challenge." (*Ibid.*) That same reasoning applies here.

2. On page *21, at the end of the last paragraph of part 2 of the Discussion, add as footnote 10 the following two-paragraph footnote:

**10** In light of this analysis, Key's reliance on *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710 (*Saint Francis*) is misplaced. In that case, which Key cited for the first time in her petition for rehearing, our Supreme Court held that, absent statutory language or a "manifest policy" to the contrary, "we presume that statutory deadlines are subject to equitable tolling." (*Id.* at p. 720.) Nothing in *Saint Francis* undermines our conclusion that equitable relief is unavailable to Key here, even assuming (again, without deciding), that such relief is not foreclosed by the statutory scheme.

In *Saint Francis,* the court explained that, where equitable tolling is available under a statute, it is a "narrow remedy that applies to toll statutes of limitations only 'occasionally and in special situations.' " (*Saint Francis, supra,* 9 Cal.5th at p. 724, quoting *Addison v. State* (1978) 21 Cal.3d 313, 316.)  The remedy applies only when three elements are present:  (1) timely notice; (2) lack of prejudice to the defendant; and (3) reasonable and good faith conduct on the part of the plaintiff.  (*Saint Francis,* at p. 724.)  The third element has both a subjective and an objective component:  "A plaintiff's conduct must be objectively reasonable *and* subjectively in good faith." (*Id.* at p. 729, italics added.)  For the reasons discussed above, Key's claimed reliance on LFG's purported agreement to extend the 100-day deadline was not objectively reasonable because LFG did not have the authority to extend that deadline.  This conclusion is unrelated to the court's authority to provide equitable relief.  Nothing in *Saint Francis* suggests that a court's authority to excuse late filings in appropriate circumstances under the doctrine of equitable tolling means that parties may simply agree to extend jurisdictional deadlines.

There is no change in the judgment.
Key's petition for rehearing is denied.
CERTIFIED FOR PUBLICATION.


LUI, P. J.        ASHMANN-GERST, J.        HOFFSTADT, J.

3

Filed 7/30/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAW FINANCE GROUP, LLC, | B305790 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCP04251) |
| v. | |
| SARAH PLOTT KEY, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Rafael A. Ongkeko, Judge. Reversed and remanded with directions.

Eisner, Christopher L. Frost, Taylor S. Simeone; Greines, Martin, Stein & Richland, Cynthia E. Tobisman and Alana H. Rotter for Plaintiff and Appellant.

Grignon Law Firm, Margaret M. Grignon and Anne M. Grignon for Defendant and Respondent.

_____

Law Finance Group (LFG) appeals from an order of the superior court denying its motion to confirm an arbitration award against respondent Sarah Plott Key. Key borrowed $2.4 million from LFG to help finance a probate action alleging that Key's sister, Elizabeth Plott Tyler, exercised undue influence over their mother in orchestrating changes to a trust (the Probate Action). Key ultimately prevailed in that action, winning the right to a third of the parents' estate. This court previously affirmed the order of the probate court awarding that relief. (See *Key v. Tyler* (June 27, 2016, B258055) [nonpub. opn.] [2016 Cal.App.Unpub.LEXIS 4757].)[1]

Although Key repaid the principal that she borrowed from LFG, she refused to pay any interest, claiming that the terms of the note violated the California Financing Law (Fin. Code, § 22000 et seq.). LFG demanded binding arbitration under the loan agreement.

A panel of three arbitrators found that some of the loan terms were invalid but otherwise enforced the loan agreement, awarding LFG $778,351 in simple interest along with attorney fees and costs. The panel issued a modified award on September 18, 2019.

Less than two weeks later, on October 1, 2019, LFG filed a petition in superior court to confirm the award. Nearly four months after that, and 130 days after service of the modified

---

[1] Litigation among the sisters continues. In *Key v. Tyler* (2019) 34 Cal.App.5th 505, we considered an anti-SLAPP motion filed in a probate proceeding to enforce a no contest clause in the parents' trust instrument. Another currently pending appeal (B298739) concerns issues arising from a petition by Key alleging that Tyler breached her duties as trustee of the trust.

arbitration award, Key filed a motion to vacate the award. Her motion claimed that the arbitrators exceeded their authority by finding that the loan from LFG was a consumer loan but nevertheless enforcing some of the terms of the loan agreement rather than finding it void. Nine days later, Key filed a response to LFG's petition raising the same arguments.

The superior court agreed with Key and vacated the arbitration award.

On appeal, LFG argues that the trial court should have independently considered the evidence underlying the arbitrators' conclusion that the litigation loan it made to Key was a consumer loan rather than a commercial loan. LFG also argues that Key's requests to vacate the arbitration award were untimely. We do not reach the substantive issue because we agree with LFG that Key did not timely request that the arbitration award be vacated.

Code of Civil Procedure section 1288 requires that a petition to vacate an arbitration award must be filed and served not later than 100 days after service of the award.[2] Section 1288.2 imposes the same deadline on a response to a petition to confirm an arbitration award when the response requests that the award be vacated. These deadlines are jurisdictional. (*Santa Monica College Faculty Assn. v. Santa Monica Community College Dist.* (2015) 243 Cal.App.4th 538, 544–545 (*Santa Monica*); *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 384–385 (*Douglass*).) Neither Key's petition to vacate the arbitration award nor her request to vacate the award in her

_____

[2] Subsequent undesignated statutory references are to the Code of Civil Procedure.

response to LFG's petition to confirm were filed within the 100-day limit. Thus, the trial court lacked jurisdiction to consider Key's request to vacate, and the arbitration award must be confirmed.

## BACKGROUND

### 1. The Loan Agreement

In 2013, Key needed money to pay her ongoing legal fees in the Probate Action. Her counsel in that action referred her to LFG.

Key borrowed approximately $2.4 million from LFG pursuant to a Loan and Security Agreement (Loan Agreement) that permitted her to borrow up to a maximum of $3 million. In addition to repayment of the principal, the Loan Agreement required Key to pay interest at a rate of 1.53 percent per month, compounded monthly, along with an origination fee (calculated as 2 percent of the maximum loan availability), a due diligence fee, and a servicing fee (calculated as 0.25 percent of the total amount that Key owed at the end of each month). Absent a default, LFG's right to repayment was limited to Key's recovery in the Probate Action and her interest in the trust that was the subject of that action.

The Loan Agreement contained an arbitration provision. That provision required that "any dispute between the Parties arising out of the transaction provided for in this Agreement" would be decided by a three-member arbitration panel under the Commercial Arbitration Rules of the American Arbitration Association. The provision also entitled the prevailing party to attorney fees.

4

## 2. The Arbitration

Key prevailed in the Probate Action, winning the right to a third of her parents' estate which, at the time, was equivalent to about $20 million. She repaid the principal amount of the $2.4 million loan from LFG, but did not pay any interest or other fees.

LFG demanded arbitration, seeking about $1.45 million that it claimed Key still owed under the Loan Agreement. In defense, Key argued that the Loan Agreement was unconscionable and that the various fees in the agreement violated provisions of the California Financing Law applicable to consumer loans.

On August 6, 2019, the three-arbitrator panel served its final arbitration award. At the request of the parties, the arbitrators later modified the award to reduce the amount of costs awarded to LFG. The modification was served on September 19, 2019.

The arbitrators found that the Loan Agreement was binding and enforceable. However, the arbitrators also found that the loan from LFG was a consumer loan and that the provisions for compounded interest and servicing fees were therefore unlawful under the California Financing Law. The arbitrators disregarded those provisions and awarded damages consisting of simple interest in the amount of $778,351. The arbitrators awarded LFG costs and attorney fees in the amount of $838,864 as the prevailing party.

## 3. LFG's Petition to Confirm the Arbitration Award and Key's Requests to Vacate

LFG filed a petition to confirm the arbitration award on October 1, 2019, less than two weeks after the modified arbitration award was served. The parties then communicated

5

about coordinating the timing for the hearing on LFG's petition and for the petition to vacate that Key intended to file.

Key's counsel agreed to accept service of LFG's petition and to file a challenge under section 170.6 to the assigned judge. The parties further agreed that "the 10 day time period for filing a Petition to Vacate will not apply and that once the new judge is appointed, and we can find out when a hearing can be set pursuant to that judge's calendar, we will work backwards to come up with a briefing schedule for the Petition to Confirm and the Petition to Vacate that we will be filing." Key's counsel confirmed this agreement by e-mail on October 10, 2019.

Over the next few months, the parties discussed setting a hearing date, and finally agreed on a hearing date of February 20, 2020. On December 12, 2019, counsel for LFG sent an e-mail to Key's counsel asking, "Do you know when your substantive petition is due? I know we talked conceptually about timelines way back. I just don't know with the hearing date set for 2/20 whether we need to revisit that or, just go according to standard timing." Key apparently did not respond to that e-mail.

The parties then communicated further about the details of filing and service. They agreed to accept electronic service, and Key's counsel informed LFG's counsel that Key intended to serve her petition to vacate on January 27, 2020.

As promised, Key filed her petition to vacate with supporting documents on January 27, 2020 (130 days after service of the modified arbitration award). On February 5, 2020, Key filed her response to LFG's petition to confirm. Key's response also requested that the arbitration award be vacated.

Both Key's petition to vacate and her response to LFG's petition to confirm argued that the arbitrators exceeded their

6

powers by finding that the loan from LFG was a consumer loan while failing to void the loan (or at least cancel all interest and other charges) under Financial Code sections 22750–22752.

4.    **The Trial Court's Ruling**

In a written order, the trial court ruled that Key's petition to vacate was untimely under the 100-day deadline of section 1288, which the court concluded was jurisdictional.  However, the court also ruled that Key's request to vacate in her opposition to LFG's petition was timely because it complied with the time period to respond to petitions to confirm specified in section 1290.6.  The court further found that, "[i]f there is a need to extend the time to the actual filing date to enable the court to decide the petition on its merits, the court finds good cause to grant such an extension."  The trial court's order did not mention section 1288.2.

On the merits, the trial court found that "the arbitrators exceeded their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy."  The court cited Financial Code section 22750, subdivision (a), which provides that, "[i]f any amount other than, or in excess of, the charges permitted by this division is willfully charged, contracted for, or received, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction."

DISCUSSION

**1.    The Governing Statutes Require that a Request to Vacate an Arbitration Award Be Served and Filed Within 100 Days of Service of the Award**

Section 1288 governs the timing of both petitions to confirm and petitions to vacate arbitration awards.  That section provides that a party seeking to confirm an award may file a petition any time within four years after service of the award.  However, a party who wishes to vacate an award must act much more quickly.  "A petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of service of a signed copy of the award on the petitioner."  (§ 1288.)

A request to vacate an arbitration award may be included in a party's response to a petition to confirm.  (§ 1285.2.)  However, such a request is also subject to the 100-day rule.  Under section 1288.2, "[a] response requesting that an award be vacated or that an award be corrected shall be served and filed not later than 100 days after the date of service of a signed copy of the award."

Sections 1288 and 1288.2 appear in title 9 of the Code of Civil Procedure (which governs arbitration) under an article entitled, "Limitations of Time."  Together, the sections establish a clear and certain 100-day deadline for any request to vacate an arbitration award.

Title 9 also contains a separate chapter entitled, "General Provisions Relating to Judicial Proceedings," which, among other things, addresses the procedures applicable to petitions and responses.  Section 1290.6 in that chapter provides that a response to a petition must be served and filed "within 10 days after service of the petition" (or within 30 days if the petition is

8

served by mail outside the state).  It also provides that the "time provided in this section for serving and filing a response may be extended by an agreement in writing between the parties to the court proceeding or, for good cause, by order of the court."

Key argues that when, as here, a petition to confirm an arbitration award is filed within 100 days of service of the award, the time limit for filing a response to the petition requesting that the award be vacated is governed by section 1290.6 rather than by section 1288.2.  Thus, according to Key, if a petition to confirm is filed within 100 days of service of the arbitration award, a request to vacate the award is timely if it complies with the 10-day requirement of section 1290.6 (as modified by any extensions), even if the request to vacate is filed more than 100 days after service of the arbitration award.

This argument requires us to interpret the governing statutes.  We therefore review the issue de novo.  (*Apple, Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135 (*Apple*); *Santa Monica, supra,* 243 Cal.App.4th at p. 544.)

In analyzing the statutes, we are guided by well-known principles.  Our analysis starts with the language of the statutes, giving the words their usual and ordinary meaning.  (*Apple, supra,* 56 Cal.4th at p. 135.)  If statutory language is not ambiguous, "we presume the lawmakers meant what they said, and the plain meaning of the language governs."  (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)  The words of a statute are "construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible."  (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  "It is a basic canon of statutory construction that statutes in pari materia should be construed together so that all parts of the statutory scheme are

given effect." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1090–1091.)

Key's interpretation of the governing statutes founders on these principles.

Key's claim that a request to vacate an arbitration award may be filed more than 100 days after service of the award contradicts the plain language of section 1288.2. That section states categorically that a response requesting that an award be vacated "*shall be*" filed and served "not later than 100 days" after service of the award. (§ 1288.2, italics added.) Key's interpretation would require reading an exception into this rule that applies when a petition to confirm is filed within 100 days after service of the arbitration award. We decline to create such an exception that does not exist in the statutory language.

In *Douglass,* this court rejected the argument that a response requesting vacation of an arbitration award filed after the 100-day period has expired is nevertheless timely if it complies with the time period for filing a response to a petition. Citing the plain language of section 1288.2, we held that a response containing a request to vacate is timely only if it is served and filed not later than 100 days after service of the award. (*Douglass, supra,* 20 Cal.App.5th at p. 385.) We explained that, "[i]f the rule were otherwise, a party who missed the initial 100-day deadline would be able to resurrect any otherwise time-barred challenge by filing a timely response to a petition to confirm." (*Ibid.*) In light of the four-year time period to file such a petition, such a rule would "effectively turn the statute's 100-day deadline into a 1,560-day deadline." (*Ibid.*) We further explained that " '[i]t is not for us to rewrite . . .

10

statute[s].' " (*Ibid.*, quoting *J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657, fn.7.)[3]

The same reasoning applies here. Key's interpretation of section 1288.2 would theoretically limit the outside range of timely responses by permitting a request to vacate after the 100-day period only if the request responds to a petition to confirm that was filed within 100 days.[4] But nothing in the language of the section supports such a specific exception. Rather, sections

---

[3] The court in *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739 (*Eternity Investments*) explained the reason for the disparity between the four-year deadline for a petition to confirm and the 100-day deadline for a petition to vacate. A petition to vacate or correct an arbitration award typically requires factual determinations. "Consequently, a challenge must be made soon after the award is served—within 100 days— while the evidence is fresh and witnesses are available. But absent a challenge, there may be no need for judicial intervention. The award is treated as a contract (§ 1287.6), and the prevailing party has a substantially longer period—up to four years (similar to the four-year statute of limitations for breach of contract (§ 337, subd. 1)—to obtain satisfaction of the award before resorting to the courts. In the event of satisfaction, judicial relief will not be necessary, conserving court resources. If, however, the award is not satisfied, the prevailing party may convert it into an enforceable judgment by way of a petition to confirm. (§§ 1287.4, 1288.) And confirmation will be a simple process absent a prompt, timely challenge to the award." (*Eternity Investments*, at p. 746.)

[4] However, as explained below, the outside limit of timely responses would nevertheless be uncertain and beyond the court's control because of the provision in section 1290.6 permitting parties to extend the response date by agreement.

11

1288.2 and 1288 together establish a clear deadline of 100 days after which a request to vacate is untimely.

Key's interpretation is also inconsistent with the broader statutory scheme. Section 1288.2 establishes a time limitation for filing a response to a petition to confirm that includes a request to vacate. Section 1290.6 is one of a number of sections in a separate chapter that governs the procedure for adjudicating petitions relating to arbitration awards. There is nothing in the statutory scheme suggesting that the Legislature intended the procedural rule in section 1290.6 governing all responses to take precedence over the firm time limitation in section 1288.2 applicable to requests to vacate.

Moreover, we must give effect to both statutes if possible. (§ 1858; *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 986.) The two sections may easily be read together to provide that, when a petition to confirm an arbitration award is filed, a response requesting that the award be vacated must be filed within 10 days of the petition (plus any extensions), and in any event no later than 100 days after service of the award. A response that fails to comply with either deadline is untimely.

Courts have consistently applied the two statutes in this manner. As discussed above, this court and others have held that a request to vacate is untimely if filed beyond 100 days even if it responds to a petition to confirm. (See *Douglass, supra,* 20 Cal.App.5th at p. 385; *Soni v. Simplelayers, Inc.* (2019) 42 Cal.App.5th 1071, 1093; *Eternity Investments, supra,* 151 Cal.App.4th at pp. 743, 745–746.) And courts have held that a response requesting vacation that is filed within the 100-day deadline is nevertheless untimely if it fails to comply with the 10-day filing deadline of section 1290.6. (See *Rivera v. Shivers*

12

(2020) 54 Cal.App.5th 82, 93–94; *Coordinated Constr., Inc. v. Canoga Big "A", Inc.* (1965) 238 Cal.App.2d 313, 317 ["section 1290.6 limits the 100-day provision found in section 1288.2"]; *Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 66–68 (*Oaktree Capital*).)[5]

---

[5] Key cites *Oaktree Capital* for the proposition that, when a petition to confirm is filed within 100 days of service of an arbitration award, "the 10-day rule trumps the 100-day limitations period." The opinion does not support such a broad reading.

In *Oaktree Capital,* the appellant argued that his request to vacate was timely because it was filed within 100 days of the arbitration award, even though there was a dispute about whether he had complied with the 10-day deadline under section 1290.6. (*Oaktree Capital, supra,* 182 Cal.App.4th at p. 66.) The court held that the appellant's response was timely because it was filed within 10 days of the arbitration award, "when one allows for the extra days for overnight mail and his temporary removal to federal court." (*Ibid.*) The court added that the response was therefore timely "irrespective of the 100-day deadline, which case law establishes did not apply here." (*Ibid.*) Because the appellant's petition in *Oaktree Capital* was filed within the 100-day deadline, the only deadline at issue was the 10-day deadline under section 1290.6. Fairly read in light of these facts, the court's statement that the 100-day deadline "did not apply" meant that the appellant's request was not timely simply because it was filed within 100 days of the arbitration award; rather, the relevant issue was whether the appellant had complied with the 10-day rule in section 1290.6. *Oaktree Capital* is therefore consistent with the rule that, when a party requests vacation of an arbitration award in response to a petition to confirm the award, the party's response must comply with *both* the 10-day deadline in section 1290.6 and the 100-day deadline in section 1288.2.

13

In contrast, Key's interpretation fails to give effect to the firm 100-day deadline in section 1288.2. Under Key's interpretation, a petition to confirm an arbitration award filed on day 99 would permit a timely response requesting vacation of the award on day 109. Further, by giving precedence to the time limits of section 1290.6 over section 1288.2 when a petition to confirm is filed within 100 days of the award, Key's interpretation would permit the parties to delay *indefinitely* a request to vacate simply by agreeing to do so.

Section 1290.6 permits the parties to extend the time for filing and serving a response to a petition by making an agreement in writing. Section 1288.2, which was enacted at the same time, contains no such extension provision. We presume that this omission was intentional. (*Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879 [where a phrase is included in one provision of a statutory scheme but omitted from another provision, "we presume that the Legislature did not intend the language included in the first to be read into the second"]; *Hennigan v. United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 8 ["The fact that a provision of a statute on a given subject is omitted from other statutes relating to a similar subject is indicative of a different legislative intent for each of the statutes"].) Key's interpretation therefore undermines the legislative scheme by permitting the parties to alter a deadline that the statutory language treats as firm.[6]

---

[6] That is of course precisely what Key urges here. Although LFG filed its petition to confirm the arbitration award within weeks after it was served, Key did not file her response for months, well after the 100-day deadline had passed. She excuses

14

Our prior decision in *Santa Monica, supra*, 243 Cal.App.4th 538, is not to the contrary.  Although in that case we stated that, "[a]s a general matter, a party seeking to vacate an arbitration award must *either* (1) file and serve a petition to vacate that award 'not later than 100 days after the date of service of a signed copy of the award' [citations], *or* (2) file and serve a timely response (that is, within 10 days) to the other party's petition to confirm that award, which seeks to vacate that award [citations]" (*id.* at p. 544, italics added), our use of the word "or" was not a holding that a response to a petition that also seeks to vacate an arbitration award is jurisdictionally proper as long as it is a timely response and irrespective of the 100-day deadline.  That is because (1) the petition to vacate filed in *Santa Monica* was an affirmative petition (not a response) that was served more than 100 days after the award was served (*id*. at p. 454) and (2) the applicability of section 1288.2 was not at issue (and, indeed, section 1288.2 was never cited *at all*) (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 127 [" ' "cases are not authority for propositions not considered" ' "]).

2.     **Key's Late Filing Cannot Be Excused Under the Doctrines of Estoppel or Waiver**

Key argues that LFG "expressly agreed in writing that the parties would not adhere to the statutory timeframes for arbitration proceedings, but instead would obtain a simultaneous hearing date for the competing petitions."  She further claims that LFG knew that Key intended to file a timely petition to vacate and that she delayed doing so because of the parties'

the delay on the ground that the parties agreed to a different deadline.

15

agreement. Key argues that, based on this conduct, LFG is equitably estopped from relying on the statutory 100-day filing deadline. Alternatively, she argues that LFG waived the right to assert that deadline.

We reject both arguments. Even assuming (without deciding) that there could be situations in which a party's failure to comply with the 100-day rule may be excused on equitable grounds, this is not one of them.

Key's estoppel and waiver arguments both depend upon the assumption that the parties could alter the 100-day deadline by agreement. But neither section 1288 nor section 1288.2 permits extension of the 100-day deadline through agreement of the parties. And, as discussed above, the provision in section 1290.6 permitting extension of the *10-day* response deadline cannot be read into the 100-day limitation in sections 1288 and 1288.2. Thus, even if Key believed that LFG had agreed to alter the 100-day deadline, she could not reasonably have relied on such an agreement in filing her response.[7]

---

[7] The evidence of such an agreement is, at best, ambiguous. The record of the parties' correspondence shows that LFG *expressly* agreed on October 10, 2019, only to alter the *10-day* period to respond to LFG's petition to confirm, which was governed by section 1290.6. (While the confirming e-mail referred to the "10 day time period for filing a Petition to Vacate," that apparently meant a request to vacate in response to LFG's petition.) The parties communicated about coordinating a hearing date for both petitions, but a fixed hearing date did not preclude Key from *filing* a timely petition to vacate well in advance of the hearing. Based upon the correspondence record, it is certainly possible that LFG intended to assert the 100-day

16

Moreover, numerous cases treat the 100-day deadline as jurisdictional.  For example, in *Santa Monica,* this court held that the trial court did not have the authority under section 473, subdivision (b) to excuse a late-filed petition to vacate because that section "cannot be relied upon to excuse a party's failure to comply with a jurisdictional statute of limitations." (*Santa Monica, supra,* 243 Cal.App.4th at p. 545; see also *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1203 (*Abers*) [the 100-day deadline "operates in the same manner as the deadline for filing an appeal, and the court loses jurisdiction to vacate the award if the petition is not timely served and filed"].)[8]  Like section 1288,

---

deadline all along while waiting to see if Key would miss it. However, that does not necessarily mean that LFG agreed to extend the 100-day deadline or intended to mislead Key about the existence of such an agreement.  Indeed, LFG itself raised the issue of the due date for Key's petition to vacate well before the deadline had passed.  When LFG's counsel asked Key's counsel by e-mail on December 12, 2019, "Do you know when your substantive petition is due," and suggested that the parties might need to "revisit" their agreement about "timelines," over two weeks remained to file a timely petition to vacate (100 days from September 19, 2019, was Saturday, December 28).  As far as the record shows, after receiving that e-mail Key did not attempt to confirm any agreement concerning the 100-day deadline.

[8] A few cases suggest that relief may be granted under section 473 for late-filed petitions to vacate.  (See *Eternity Investments, supra,* 151 Cal.App.4th at p. 746; *De Mello v. Souza* (1973) 36 Cal.App.3d 79, 84; *Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, 1512.)  However, none of those cases actually granted relief under section 473, and their statements are therefore arguably dicta.  Moreover, as the court noted in *Abers,*

17

section 1288.2 imposes a strict 100-day deadline to file and serve a request to vacate. It is similarly jurisdictional.

The rule is firmly established that parties may not confer jurisdiction by agreement. (See *Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 138–139 (*Rockefeller*) [" '[w]here the jurisdiction of the Court as to the *subject-matter* has been limited by the Constitution or the statute, the consent of the parties cannot confer jurisdiction' "], quoting *Gray v. Hawes* (1857) 8 Cal. 562, 568; *People v. Burhop* (2021) 65 Cal.App.5th 808, 813 [trial court loses jurisdiction over the subject matter of an appealed order, and "even the consent of the parties has been held ineffective to reinvest the trial court with jurisdiction" until the remittitur issues], quoting *In re Lukasik* (1951) 108 Cal.App.2d 438, 443; *Land v. Johnston* (1909) 156 Cal. 253, 254–255 ["the time within which a notice of appeal may be filed is fixed by law and cannot be enlarged by stipulation of the parties"].) Thus, parties may not simply waive the jurisdictional deadline in sections 1288 and 1288.2 by stipulation.

Key argues that the 100-day rule is not jurisdictional, but is like other filing deadlines that parties may expressly or impliedly waive. The cases she cites in support of that argument either do not stand for that proposition or are unpersuasive.

For example, Key cites *Abers* and *Southern Cal. Pipe Trades Dist. Council No. 16 v. Merritt* (1981) 126 Cal.App.3d 530

---

the cases are not persuasive "for the simple reason that none of them makes any effort to persuade." (*Abers, supra,* 217 Cal.App.4th at p. 1212.) In any event, none of those cases suggests that the 100-day deadline can be changed by agreement.

(*So. Cal. Pipe Trades*) for the principle that a party may be equitably estopped from asserting the 100-day limitations period. But those cases both concerned questions of proper *service*, not a purported agreement to extend the 100-day deadline. In *So. Cal. Pipe Trades,* the court ruled that an individual was not a party to the arbitration and that it would therefore be "fundamentally unfair" to conclude that service on him on behalf of a corporation was adequate. (126 Cal.App.3d at p. 541.) And in *Abers,* the court rejected the argument that a party was estopped from contesting whether a petition was properly served, finding that there was "no basis in equity to estop the [party] from demanding compliance with legal requirements for service of process." (*Abers, supra,* 217 Cal.App.4th at p. 1209.)

Parties may generally agree to *personal* jurisdiction by accepting service of process or appearing in an action. (See *Rockefeller, supra,* 9 Cal.5th at pp. 138–139 ["Cases have recognized that one may waive both personal jurisdiction and notice aspects of service"].) In contrast, as discussed above, parties may not circumvent statutory jurisdictional deadlines. (*Ibid.*) *Abers* and *So. Cal. Pipe Trades* therefore do not support the conclusion that Key and LFG could just agree to extend the jurisdictional deadline in sections 1288 and 1288.2.

Key also cites *Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183, which suggested in a footnote that the "failure to raise the limitations period under sections 1288 and 1288.2 in the trial court forfeits the issue on appeal." The court did not actually decide that issue, as it was raised for the first time at oral argument. (At p. 1192, fn. 10.) In any event, to the extent the court in *Trabuco* intended to suggest that the 100-day rule is not jurisdictional, we disagree in light of the

19

explicit statutory language and the clear precedent to the contrary.

Whatever else they might stand for, none of the cases that Key cites holds that parties are free to extend the 100-day deadline in sections 1288 and 1288.2 by stipulation. Thus, in light of the clear language of sections 1288 and 1288.2 and the cases interpreting them, Key could not have reasonably believed that LFG had the authority to waive the 100-day deadline.

In sum, Key might have been misled about LFG's *intention* to waive the 100-day deadline, but Key could not have reasonably believed that LFG had the legal *authority* to do so. Key was represented by counsel. For purposes of estoppel claims, " 'attorneys are "charged with knowledge of the law in California." ' " (*Abers, supra,* 217 Cal.App.4th at p. 1210, quoting *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1316.) Key was therefore charged with the knowledge that the 100-day deadline is jurisdictional and could not be waived or extended by agreement. Thus, LFG could not waive the deadline and was not estopped from asserting it as a ground for disregarding Key's untimely request to vacate.

### 3. LFG's Petition to Confirm Must Be Granted

Section 1286 states that, if a petition to confirm is duly served and filed, "the court *shall* confirm the award as made," unless the award is corrected or vacated or the proceeding is dismissed. (§ 1286, italics added.) "The Legislature's use of the word 'shall' renders this provision mandatory." (*Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 8 (*Law Offices*).) Thus, confirmation of an arbitration award "is the mandatory outcome absent the correction or vacatur of the award

20

or the dismissal of the petition." (*Eternity Investments, supra,* 151 Cal.App.4th at p. 745, citing § 1286.)

Key's request to vacate was untimely, and she did not request any correction (which, in any event, would also have been untimely under sections 1288 and 1288.2). Key has not identified any grounds for dismissal of LFG's petition. The petition was timely and in proper form and Key was a party to the arbitration. (See §§ 1285.4, 1287.2.) The award must therefore be confirmed. (See *Law Offices, supra,* 176 Cal.App.4th at p. 3 [remanding for trial court to confirm an arbitration award as "the only proper resolution of this case" after the trial court correctly denied a petition to correct the award].)

## DISPOSITION

The trial court's order is reversed.  On remand, the trial court shall enter an order confirming the arbitration award.  Appellant Law Finance Group is entitled to its costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.